**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| HIGHLAND PARK MEZZ LENDER LLC,<br>1 Beacon Street, 24th Floor, Boston, MA 02108<br><br>Plaintiff,<br><br>v.<br><br>CHRISTOPHER J. DONATELLI, 1400 Irving Street, NW, Washington, DC 20010, and LOUIS T. DONATELLI, 8300 Burdette Road, Apt. 670, Bethesda, MD 20817,<br><br>Defendants. | Case No. 1:25-cv-01614 |

## COMPLAINT

Plaintiff Highland Park Mezz Lender ("**Lender**"), through its attorneys, brings this action against Defendants Christopher J. Donatelli and Louis T. Donatelli (collectively the "**Donatellis**" or the "**Guarantors**"), and alleges as follows:

## INTRODUCTION

1. Lender brings this action to recover more than $15.2 million owed by Guarantors pursuant to their guaranty of a loan made to two borrowers, Columbia Heights Ventures Parcel 26 Holdings, LLC and Highland Park West, LLC (referred to collectively hereafter as "**Borrower**"). Lender also demands the attorneys' fees, costs and expenses it has and will incur in connection with enforcing its rights under the guaranty.

## PARTIES

2. Lender is a limited liability company organized and existing under the laws of the State of Delaware.

3. Upon information and belief, defendant Christopher Donatelli is a citizen of the District of Columbia residing at 1400 Irving Street, NW, Washington, DC 20010.

4. Upon information and belief, defendant Louis Donatelli is a citizen of Maryland residing at 8300 Burdette Road, Apt. 670, Bethesda, MD 20817.

## **JURISDICTION, VENUE, AND APPLICABLE LAW**

5. Jurisdiction is proper pursuant to 28 U.S.C. § 1332. There is complete diversity between the adverse parties, and the amount in controversy, without interest and costs, exceeds $75,000.

6. Venue is proper pursuant to 28 U.S.C. § 1391 because the property that is the subject of agreement giving rise to this action is situated in the District of Columbia.

7. Pursuant to the guaranty at issue herein, the laws of the state of New York shall govern the substance of this dispute.

## **FACTS**

8. In the summer of 2022, the Donatellis sought to refinance existing debt on a residential complex located at 1400 and 1444 Irving Street, N.W. in the District of Columbia (consisting of approximately 373 multi-family rental units known as Highland Park I and Highland Park II (the "**Property**")).

9. To facilitate that refinancing, the mezzanine loan was made by MF1 Capital LLC to Borrower, secured by a pledge of Borrower's ownership interest in the entities that own the Property (the "**Loan**").

10. Pursuant to the Loan, Borrower is indebted to Lender in the original principal amount of Seventeen Million and 00/100 Dollars ($17,000,000.00).

11. The Loan is evidenced, *inter alia*, by a Mezzanine Multifamily Loan and Security Agreement dated as of July 1, 2022 (the "**Loan Agreement**") between Borrower and MF1 Capital LLC—which later assigned the Loan and its right under all of the loan documents to Plaintiff Lender.

12. The assignment from MF1 Capital LLC to Lender is evidenced by an Omnibus Assignment Agreement dated January 18, 2024 (the "**Assignment**").

13. In consideration of and inducement for the execution of the Loan Agreement, the Guarantors executed a guaranty, evidenced, *inter alia*, by the Mezzanine Guaranty of Recourse Obligations of Borrower dated July 1, 2022 (the "**Guaranty**"). A true and correct copy of the Guaranty is attached hereto as **EXHIBIT A** and incorporated by reference herein.

14. By the Guaranty, the Guarantors unconditionally agreed to the full and prompt payment of all amounts payable to Lender under the Loan Agreement at Lender's option.

15. As of February 25. 2025, Borrower owes Lender $15,243,217.67 plus interest on Accrued Principal Amounts under the Loan Agreement. That amount continues to accrue.

16. Under the Guaranty and Loan Agreement, Guarantors are jointly and severally liable for the unpaid Accrued Principal Amounts owed by Borrower.

17. Lender has executed its option to recover against the Guarantors, and the Guarantors have failed to pay the amounts owed under the Guaranty.

## FIRST CAUSE OF ACTION
## (Breach of Guaranty)

18. Plaintiff repeats and realleges the allegations of paragraphs 1 through 17 as if set forth in full here.

19. The Guaranty is a valid and enforceable contract.

20. The Guaranty defines the recourse obligations as "all obligations and liabilities of Borrower for which Borrower shall be personally liable pursuant to Article 3 of the Loan Agreement." *See* Guaranty at 1.

21. Article 3 of the Loan Agreement holds Borrower personally liable for failure "to make any payment of the Accrued Principal Amounts pursuant to Section 2.04(b) hereof whether or not Available Excess Cash Flow is sufficient to make such payment, provided that liability under this clause (i) shall be limited to the amount of such Accrued Principal Amounts." Loan Agreement, §§ 3.01, 3.03.

22. Under Section 2.04(b) of the Loan Agreement, "if any interest on the Loan accrues and remains unpaid as a result of the insufficiency of Available Excess Cash Flow to cover the Monthly Payment Amount, any accrued and unpaid amounts in connection therewith shall, to the extent permitted by Applicable Law, be added to the Outstanding Principal Balance (such excess amounts, '**Accrued Principal Amounts**') and the Accrued Principal Amounts shall themselves accrue interest at the Interest Rate)." (emphasis in original).

23. Borrower has failed to pay the Accrued Principal Amounts under the Loan Agreement, consisting of more than $15,243,217.67 plus interest.

24. Therefore, pursuant to the Guaranty, Guarantors are jointly and severally liable to Plaintiff for more than $15,243,217.67 plus interest.

25. Guarantors are in breach of the Guaranty due to their failure to pay the amounts owed under the Guaranty.

26. Guarantors will continue to be liable for additional amounts and interest that may accrue under the Guaranty until all obligations are paid in full.

**SECOND CAUSE OF ACTION**
**(Costs of Enforcement)**

27. Plaintiff repeats and realleges the allegations of paragraphs 1 through 26 as if set forth in full here.

28. Pursuant to §2.02 of the Guaranty, Guarantors are liable for the costs of enforcing the Guaranty.

29. Lender has incurred, and will continue to incur, expenses to enforce the Guaranty, including attorneys' fees.

30. Accordingly, Lender is entitled to recover from Guarantors such amounts, evidence of which will be submitted in due course.

WHEREFORE, Plaintiff demands a money judgment against the Defendants Christopher Donatelli and Louis Donatelli in an amount in excess of $15.2 million, together with reasonable attorneys' fees, costs and disbursements and such other relief as the Court deems just and proper.

Respectfully submitted,

Date: May 20, 2025

*/s/David H. Bamberger*

David H. Bamberger (DC Bar No. 362285)
Olivia Houston (DC Bar No. 1741744)
DLA Piper LLP (US)
500 8th Street, N.W.
Washington, D.C. 20004
P: (202) 799-4500
F: (202) 799-5000
david.bamberger@us.dlapiper.com
olivia.houston@us.dlapiper.com

*Counsel for Plaintiff Highland Park Mezz Lender, LLC*

# EXHIBIT A

As of July 1, 2022

**MEZZANINE GUARANTY OF RECOURSE OBLIGATIONS OF BORROWER**

FOR VALUE RECEIVED, and to induce MF1 CAPITAL LLC, a Delaware limited liability company, having an address at 1 Beacon Street, 24th Floor, Boston, Massachusetts 02108 (together with its successors and assigns, "**Lender**"), to lend to COLUMBIA HEIGHTS VENTURES PARCEL 26 HOLDINGS, LLC, a Delaware limited liability company ("**CHV Mezz Borrower**"), and HIGHLAND PARK WEST, LLC, a Delaware limited liability company ("**HPW Mezz Borrower**") (CHV Mezz Borrower and HPW Mezz Borrower, individually and/or together, as the context may require, jointly and severally, "**Borrower**"), each having an address at c/o Donatelli Development, 4416 East-West Highway, Suite 410, Bethesda, Maryland 20814, the principal sum of $17,000,000.00 (the "**Loan**"), advanced pursuant to that certain Mezzanine Multifamily Loan and Security Agreement, dated as of the date hereof, between Borrower and Lender (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, the "**Loan Agreement**") and evidenced by the Note and the other Loan Documents, the undersigned, CHRISTOPHER J. DONATELLI, an individual, having an address at 4416 East West Highway, Suite 410, Bethesda, Maryland 20814 ("**C. Donatelli Guarantor**") and LOUIS T. DONATELLI, an individual, having an address at 4416 East-West Highway, Suite 410, Bethesda, Maryland 20814 ("**L. Donatelli Guarantor**"; together with C. Donatelli Guarantor, individually and collectively as the context may require, jointly and severally, "**Guarantor**") hereby absolutely and unconditionally guarantees to Lender the prompt and unconditional payment of the Guaranteed Recourse Obligations of Borrower (hereinafter defined). All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Loan Agreement.

It is expressly understood and agreed that this is a continuing guaranty and that the obligations of Guarantor hereunder are and shall be absolute under any and all circumstances, without regard to the validity, regularity or enforceability of the Note, the Loan Agreement, or the other Loan Documents, a true copy of each of said documents Guarantor hereby acknowledges having received and reviewed.

## ARTICLE I
## DEFINITIONS

The term "**Debt**" as used in this Mezzanine Guaranty of Recourse Obligations of Borrower (as the same may be amended, restated, replaced, supplemented or otherwise modified from time to time, this "**Guaranty**") shall mean the principal sum evidenced by the Note and secured by the Pledge Agreement, or so much thereof as may be outstanding from time to time, together with interest thereon at the rate of interest specified in the Note and all other sums other than principal or interest which may or shall become due and payable pursuant to the provisions of the Note, the Loan Agreement, or the other Loan Documents.

The term "**Guaranteed Recourse Obligations of Borrower**" as used in this Guaranty shall mean all obligations and liabilities of Borrower for which Borrower shall be personally liable pursuant to Article 3 of the Loan Agreement.

## ARTICLE II
## COVENANTS

**2.01 Subordination and Agreement Not To Accept Payment**. Any indebtedness of Borrower to Guarantor now or hereafter existing (including, but not limited to, any rights to subrogation Guarantor may have as a result of any payment by Guarantor under this Guaranty), together with any interest thereon, shall be, and such indebtedness is, hereby deferred, postponed and subordinated to the prior payment in full of the Debt. Until payment in full of the Debt (and including interest accruing on the Note after the commencement of a proceeding by or against Borrower under the Bankruptcy Code and the regulations adopted and promulgated pursuant thereto, which interest the parties agree shall remain a claim that is prior and superior to any claim of Guarantor notwithstanding any contrary practice, custom or ruling in cases under the Bankruptcy Code generally), Guarantor agrees not to accept any payment or satisfaction of any kind of indebtedness of Borrower to Guarantor and hereby assigns such indebtedness to Lender, including the right to file proof of claim and to vote thereon in connection with any such proceeding under the Bankruptcy Code, including the right to vote on any plan of reorganization. Further, if Guarantor shall comprise more than one Person, Guarantor agrees that until such payment in full of the Debt, (a) no one of them shall accept payment from the others by way of contribution on account of any payment made hereunder by such party to Lender, (b) no one of them will take any action to exercise or enforce any rights to such contribution, and (c) if any Guarantor should receive any payment, satisfaction or security for any indebtedness of Borrower to any Guarantor or for any contribution by the other Guarantors for payment made hereunder by the recipient to Lender, the same shall be delivered to Lender in the form received, endorsed or assigned as may be appropriate for application on account of, or as security for, the Debt and until so delivered, shall be held in trust for Lender as security for the Debt.

**2.02 Reimbursement**. Guarantor agrees that, with or without notice or demand, Guarantor will reimburse Lender, to the extent that such reimbursement is not made by Borrower, for all expenses (including counsel fees and disbursements) incurred by Lender in connection with the collection of the Guaranteed Recourse Obligations of Borrower or any portion thereof or with the enforcement of this Guaranty.

**2.03 Application**. All moneys available to Lender for application in payment or reduction of the Debt may be applied by Lender in such manner and in such amounts and at such time or times and in such order and priority as Lender may see fit to the payment or reduction of such portion of the Debt as Lender may elect.

**2.04 Waiver**.

(a) Guarantor hereby waives (i) any defense based upon any legal disability or other defense of Borrower, any other guarantor or other person, or by reason of the cessation or limitation of the liability of Borrower from any cause other than full payment of all sums payable under the Note, the Loan Agreement or any of the other Loan Documents; (ii) any defense based upon any lack of authority of the officers, directors, partners or agents acting or purporting to act on behalf of Borrower or any principal of Borrower or any defect in the formation of Borrower or any principal of Borrower; (iii) any defense based upon the application by Borrower of the proceeds of the Loan for purposes other than the purposes represented by Borrower to Lender or

intended or understood by Lender or Guarantor; (iv) all rights and defenses arising out of an election of remedies by Lender; (v) any defense based upon Lender's failure to disclose to Guarantor any information concerning Borrower's financial condition or any other circumstances bearing on Borrower's ability to pay all sums payable under the Loan Agreement or any of the other Loan Documents; (vi) any defense based upon any statute or rule of law which provides that the obligation of a surety must be neither larger in amount nor in any other respects more burdensome than that of a principal; (vii) any defense based upon Lender's election, in any proceeding instituted under the Bankruptcy Code, of the application of Section 1111(b)(2) of the Bankruptcy Code or any successor statute; (viii) any defense based upon any borrowing or any grant of a security interest under Section 364 of the Bankruptcy Code; (ix) presentment, demand, protest and notice of any kind; and (x) the benefit of any statute of limitations affecting the liability of Guarantor hereunder or the enforcement hereof. In addition, Guarantor waives all rights and defenses that Guarantor may have because Borrower's debt is secured by the Collateral. This means, among other things: (1) Lender may collect from Guarantor without first foreclosing on the Collateral; and (2) if Lender forecloses on any Collateral, then (i) the amount of the debt may be reduced only by the price for which that collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price, and (ii) Lender may collect from Guarantor even if Lender, by foreclosing on the Collateral, has destroyed any right Guarantor may have to collect from Borrower. The foregoing sentence is an unconditional and irrevocable waiver of any rights and defenses Guarantor may have because Borrower's debt is secured by the Collateral. Finally, Guarantor agrees that the payment of all sums payable under the Loan Agreement or any of the other Loan Documents or any part thereof or other act which tolls any statute of limitations applicable to the Note or the other Loan Documents shall similarly operate to toll the statute of limitations applicable to Guarantor's liability hereunder.

(b) Guarantor hereby acknowledges that: (i) as part of Lender's consideration for entering into this transaction, Lender has specifically bargained for the waiver and relinquishment by Guarantor of all such defenses and (ii) Guarantor has had the opportunity to seek and receive legal advice from skilled legal counsel in the area of financial transactions of the type reflected in this Guaranty and the Loan Documents. Guarantor hereby represents and confirms to Lender that Guarantor is fully informed regarding, and that Guarantor does thoroughly understand, (1) the nature of all such possible defenses, (2) the circumstances under which those defenses may arise, (3) the benefits which those defenses might confer upon Guarantor, and (4) the legal consequences to Guarantor of waiving those defenses. Guarantor acknowledges that Guarantor has entered into this Guaranty, and both undertaken Guarantor's obligations and given its unconditional waiver with the intent that this Guaranty and all such waivers shall be fully enforceable by Lender, and that Lender has been induced to enter into this transaction in material reliance upon the presumed full enforceability thereof.

**2.05 Validity of Guaranty**. Guarantor further agrees that the validity of this Guaranty and the obligations of Guarantor hereunder shall in no way be terminated, affected or impaired (a) by reason of the assertion by Lender of any rights or remedies which it may have under or with respect to either the Note, the Loan Agreement, or the other Loan Documents, against any Person obligated thereunder or the Collateral covered under the Loan Agreement, or (b) by reason of any failure to file or record any of such instruments or to take or perfect any security intended to be provided thereby, or (c) by reason of the release of the Collateral covered under the Loan Agreement or other collateral for the Loan, or (d) by reason of Lender's failure to exercise, or

delay in exercising, any such right or remedy or any right or remedy Lender may have hereunder or in respect to this Guaranty, or (e) by reason of the commencement of a case under the Bankruptcy Code by or against any person obligated under the Note, the Loan Agreement or the other Loan Documents, or the death of any Guarantor, or (f) by reason of any payment made on the Debt or any other indebtedness arising under the Note, the Loan Agreement, or the other Loan Documents, whether made by Borrower or Guarantor or any other person, which is required to be refunded pursuant to any bankruptcy or insolvency law; it being understood that no payment so refunded shall be considered as a payment of any portion of the Debt, nor shall it have the effect of reducing the liability of Guarantor hereunder. It is further understood, that if Borrower shall have taken advantage of, or be subject to the protection of, any provision in the Bankruptcy Code, the effect of which is to prevent or delay Lender from taking any remedial action against Borrower, including the exercise of any option Lender has to declare the Debt due and payable on the happening of any default or event by which under the terms of the Note, the Loan Agreement, or the other Loan Documents, the Debt shall become due and payable, Lender may, as against Guarantor, nevertheless, declare the Debt due and payable and enforce any or all of its rights and remedies against Guarantor provided for herein.

**2.06 Full Force and Effect**. Guarantor further covenants that this Guaranty shall remain and continue in full force and effect as to any modification, extension or renewal of the Note, the Loan Agreement, or the other Loan Documents, that Lender shall not be under a duty to protect, secure or insure the Collateral covered under the Loan Agreement, and that other indulgences or forbearance may be granted under any or all of such documents, all of which may be made, done or suffered without notice to, or further consent of, Guarantor.

**2.07 No Plan Assets.** Guarantor hereby covenants and agrees with Lender that during the term of the Loan or of any obligation or right hereunder, none of the assets of Guarantor shall constitute Plan Assets.

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES

Guarantor further represents and warrants to Lender as follows:

**3.01 No Plan Assets**. Guarantor hereby represents and warrants that none of the assets of Guarantor constitute or will constitute Plan Assets of one or more Plans. If Guarantor is not a natural person, Guarantor further represents and warrants that (a) Guarantor is not a "governmental plan" within the meaning of Section 3(32) of ERISA and (b) transactions by or with Guarantor are not subject to State statutes regulating investment of, and fiduciary obligations with respect to, governmental plans similar to the provisions of Section 406 of ERISA or Section 4975 of the Code currently in effect, which prohibit or otherwise restrict the transactions contemplated by this Guaranty.

**3.02 Due Execution and Delivery**. This Guaranty has been duly executed and delivered by Guarantor.

**3.03 Enforceability**. This Guaranty constitutes a legal, valid and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms, except as enforceability

may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws affecting the enforcement of creditors' rights generally.

**3.04 Violation of Laws**. The execution, delivery and performance by Guarantor of its obligations under this Guaranty do not and will not violate any law, regulation, order, writ, injunction or decree of any court or governmental body, agency or other instrumentality applicable to Guarantor, or result in a breach of any of the terms, conditions or provisions of, or constitute a default under, or result in the creation or imposition of any mortgage, lien, charge or encumbrance of any nature whatsoever upon any of the assets of Guarantor pursuant to the terms of any mortgage, indenture, agreement or instrument to which Guarantor is a party or by which it or any of its properties is bound. Guarantor is not in default under any other guaranty which it has provided to Lender.

**3.05 No Litigation**. There are no actions, suits or proceedings at law or at equity, pending or threatened against or affecting Guarantor or which involve or might involve the validity or enforceability of this Guaranty or which might materially adversely affect the financial condition of Guarantor or the ability of Guarantor to perform any of its obligations under this Guaranty. Guarantor is not in default beyond any applicable grace or cure period with respect to any order, writ, injunction, decree or demand of any Governmental Authority which might materially adversely affect the financial condition of Guarantor or the ability of Guarantor to perform any of its obligations under this Guaranty.

**3.06 Consents**. All consents, approvals, orders or authorizations of, or registrations, declarations or filings with, all Governmental Authorities (collectively, the "**Consents**") that are required in connection with the valid execution, delivery and performance by Guarantor of this Guaranty have been obtained and Guarantor agrees that all Consents required in connection with the carrying out or performance of any of Guarantor's obligations under this Guaranty will be obtained when required.

**3.07 Financial Statements**. All financial statements of Guarantor heretofore delivered to Lender are true and correct in all material respects and fairly present the financial condition of Guarantor as of the respective dates thereof, and no materially adverse change has occurred in the financial conditions reflected therein since the respective dates thereof. None of the aforesaid financial statements or any certificate or statement furnished to Lender by or on behalf of Guarantor in connection with the transactions contemplated hereby, and none of the representations and warranties in this Guaranty contains any untrue statement of a material fact or omits to state a material fact necessary in order to make the statements contained therein or herein not misleading. Guarantor is not insolvent within the meaning of the United States Bankruptcy Code or any other applicable law, code or regulation and the execution, delivery and performance of this Guaranty will not render Guarantor insolvent.

**3.08 Ownership in Borrower**. C. Donatelli Guarantor is the owner, directly or indirectly, of certain legal and beneficial equity interests in Borrower. L. Donatelli Guarantor is the father of C. Donatelli Guarantor and covenants and agrees that he has received adequate consideration from the Loan to Borrower in exchange for entering into, executing and delivering this Guaranty in connection with the Loan.

## ARTICLE IV
## FINANCIAL REPORTING

**4.01 Reporting Requirements**. As a further inducement to Lender to make the Loan and in consideration thereof, Guarantor further covenants and agrees that Guarantor shall deliver to Lender (a) within ninety (90) days after the end of each Fiscal Year, a complete copy of Guarantor's annual financial statements prepared by an independent certified public accountant, certified by Guarantor and in form, content, level of detail and scope satisfactory to Lender, (b) within twenty (20) days after the end of each calendar quarter, a certificate of Guarantor setting forth the Net Worth (as defined below) and Liquid Assets (as defined below) of Guarantor in form, content, level of detail and scope satisfactory to Lender and (c) ten (10) Business Days after request by Lender, such other financial information with respect to Guarantor as Lender may request.

**4.02 Lender's Right to Obtain Audited Financials**. Lender may require that Guarantor's books and records be audited, at Guarantor's expense, by an independent certified public accountant selected by Lender in order to produce or audit any statements, schedules, and reports of Guarantor required by Section 4.01 if:

(a) Guarantor fails to provide in a timely manner the statements, schedules, and reports required by Section 4.01 and, thereafter, Guarantor fails to provide such statements, schedules, and reports within thirty (30) days after written notice by Lender to Guarantor of such default in performance;

(b) the statements, schedules, and reports submitted to Lender pursuant to Section 4.01 are not full, complete, and accurate in all material respects as determined by Lender and, thereafter, Guarantor fails to provide such statements, schedules, and reports within thirty (30) days after written notice by Lender to Guarantor of such default in performance; or

(c) an Event of Default has occurred and is continuing.

## ARTICLE V
## NET WORTH AND LIQUIDITY REQUIREMENTS

As a further inducement to Lender to make the Loan and in consideration thereof, Guarantor further covenants and agrees with Lender as follows:

**5.01 Net Worth and Liquidity**. Until the Debt has been paid in full, Guarantor (i) shall maintain (A) a Net Worth in excess of $50,000,000.00 (the "**Net Worth Threshold**") and (B) Liquid Assets having a market value of at least $5,000,000.00 (the "**Liquid Assets Threshold**") and (ii) shall not sell, pledge, mortgage or otherwise transfer any of its assets, or any interest therein, which would cause Guarantor's Net Worth to fall below the Net Worth Threshold or Guarantor's Liquid Assets to fall below the Liquid Assets Threshold.

**5.02 Affiliate Transactions**. Guarantor shall not, at any time while an Event of Default has occurred and is continuing, either (i) enter into or effectuate any transaction with any Affiliate which would reduce the Net Worth of Guarantor or (ii) sell, pledge, mortgage or otherwise transfer to any Person any of Guarantor's assets, or any interest therein.

**5.03 Definitions**. As used herein, (I) "**GAAP**" shall mean generally accepted accounting principles, consistently applied, (II) "**Liquid Assets**" shall mean assets in the form of cash, cash equivalents, obligations of (or fully guaranteed as to principal and interest by) the United States or any agency or instrumentality thereof (provided the full faith and credit of the United States supports such obligation or guarantee), certificates of deposit issued by a commercial bank having net assets of not less than $500 million, securities listed and traded on a recognized stock exchange or traded over the counter and listed in the National Association of Securities Dealers Automatic Quotations, or liquid debt instruments that have a readily ascertainable value and are regularly traded in a recognized financial market, and (III) "**Net Worth**" shall mean, as of a given date, (x) the total assets of Guarantor as of such date less (y) Guarantor's total liabilities as of such date, determined in accordance with GAAP or consistent with the method and manner utilized in the financial reports of Guarantor delivered to Lender at or prior to closing; provided, however, that for the purposes of calculating Net Worth hereunder, (A) the value of equity in the Property shall not be considered and (B) all recourse obligations of Guarantor will be included in total liabilities under clause (y) above.

## ARTICLE VI
## MISCELLANEOUS

**6.01 Guaranty of Payment**. This is a guaranty of payment and not of collection and upon any default of Borrower under the Note, the Loan Agreement, or the other Loan Documents, Lender may, at its option, proceed directly and at once, without notice, against Guarantor to collect and recover the full amount of the liability hereunder with respect to the Guaranteed Recourse Obligations of Borrower or any portion thereof, without proceeding against Borrower or any other person, or foreclosing upon, selling, or otherwise disposing of or collecting or applying against the Collateral or other collateral for the Loan. Notwithstanding anything to the contrary herein, upon full repayment and satisfaction of the Loan in accordance with the Loan Documents, the obligations of the Guarantor under this Guaranty shall terminate.

**6.02 Successors and Assigns/Joint and Several Liability**. Each reference herein to Lender shall be deemed to include its successors and assigns, to whose favor the provisions of this Guaranty shall also inure. Each reference herein to Guarantor shall be deemed to include the heirs, executors, administrators, legal representatives, successors and assigns of Guarantor, all of whom shall be bound by the provisions of this Guaranty. If this Guaranty is signed by more than one Person, then all of the obligations of Guarantor arising hereunder shall be jointly and severally binding on each of the undersigned and shall be deemed to include their heirs, executors, administrators, legal representatives, successors and assigns, and the term "**Guarantor**" shall mean all of such Persons and each of them individually.

**6.03 Partnerships**. If any party hereto shall be a partnership, the agreements and obligations on the part of Guarantor herein contained shall remain in force and application notwithstanding any changes in the individuals composing the partnership and the term "**Guarantor**" shall include any altered or successive partnerships but the predecessor partnerships and their partners shall not thereby be released from any obligations or liability hereunder.

**6.04 Notices**. All notices required or permitted hereunder shall be given and shall become effective as provided in the Loan Agreement. Notices to Guarantor shall be sent to it at its address given in or pursuant to the first paragraph hereof.

**6.05 Agreement**. All understandings, representations and agreements heretofore had with respect to this Guaranty are merged into this Guaranty which alone fully and completely expresses the agreement of Guarantor and Lender.

**6.06 Duplicate Originals; Counterparts**. This Guaranty may be executed in any number of duplicate originals and each duplicate original shall be deemed to be an original. This Guaranty may be executed in several counterparts, each of which counterparts shall be deemed an original instrument and all of which together shall constitute a single Guaranty. The failure of any party hereto to execute this Guaranty, or any counterpart hereof, shall not relieve the other signatories from their obligations hereunder.

**6.07 No Oral Change**. This Guaranty may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Lender or Borrower, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

**6.08 Headings, etc**. The headings and captions of various paragraphs of this Guaranty are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

**6.09 Secondary Market**. Lender may sell, transfer and deliver the Note and assign the Loan Agreement, the Pledge Agreement, this Guaranty and the other Loan Documents to one or more Investors in the secondary mortgage market. In connection with such sale, Lender may retain or assign responsibility for servicing the Loan, including the Note, the Loan Agreement, the Pledge Agreement, this Guaranty and the other Loan Documents, or may delegate some or all of such responsibility and/or obligations to a servicer including, but not limited to, any subservicer or master servicer, on behalf of the Investors. All references to Lender herein shall refer to and include any such servicer to the extent applicable. To the extent Lender splits the Loan into multiple loans or mezzanine loans, Guarantor agrees to execute a guaranty in substantially the form of this Guaranty for the benefit of the holders of any such loans.

**6.10 Inapplicable Provisions**. If any term, condition or covenant of this Guaranty shall be held to be invalid, illegal or unenforceable in any respect, this Guaranty shall be construed without such provision.

**6.11 Waiver of Jury Trial**. Guarantor covenants and agrees that in any action or proceeding brought by Lender against Guarantor on this Guaranty, Guarantor shall and does hereby waive trial by jury.

**6.12 Governing Law**. This Guaranty shall be governed, construed and interpreted as to validity, enforcement and in all other respects, in accordance with the laws of the state of New York.

**6.13 Submission to Jurisdiction**. Guarantor covenants and agrees (a) that the Supreme Court of the state of New York for the County of New York, or, in a case involving diversity of citizenship, the United States District Court for the Southern District of New York, shall have exclusive jurisdiction of any such action or proceeding and (b) that service of any summons and complaint or other process in any such action or proceeding may be made by registered or certified mail directed to Guarantor at Guarantor's address set forth above, Guarantor waiving personal service thereof. Nothing in this Guaranty will be deemed to preclude Lender from bringing an action or proceeding with respect hereto in any other jurisdiction.

**6.14 Replacement Guarantor**. To the extent that any Guarantor is a natural person, the death or incompetency of such Guarantor shall be an Event of Default hereunder unless such Guarantor is replaced in accordance with this Section 6.14. Borrower shall be permitted to substitute a replacement guarantor and no "Event of Default" shall be deemed to have occurred hereunder, provided that (a) no other Event of Default hereunder or under any of the other Loan Documents has occurred and is then continuing; and (b) each of the following terms and conditions are satisfied: (i) within thirty (30) days after the occurrence of such death or incompetency, Borrower delivers to Lender written notice of Borrower's intent to substitute the guarantor, (ii) the replacement guarantor is a Satisfactory Replacement Guarantor (as defined below), (iii) within thirty (30) days after delivery of the written notice described in the preceding subclause (i), such Satisfactory Replacement Guarantor assumes the obligations of Guarantor hereunder, under the Environmental Indemnity and under the other Loan Documents in a manner satisfying the Prudent Lender Standard (as defined below), (iv) concurrently with such assumption, (A) such Satisfactory Replacement Guarantor delivers to Lender a Spousal Consent (as defined below), as and to the extent applicable, and (B) each of Borrower and such Satisfactory Replacement Guarantor affirms each of their respective obligations under the Loan Documents in a manner satisfying the Prudent Lender Standard, and (v) prior to or concurrently with such assumption, as applicable, Lender receives such information, documentation and opinions as may be required by Lender in connection with such assumption and the foregoing in order to satisfy the Prudent Lender Standard. As used herein, the term "**Satisfactory Replacement Guarantor**" shall mean a replacement guarantor that (1) satisfies both the Net Worth Threshold and the Liquid Assets Threshold, (2) is acceptable to Lender, which such approval may include (pursuant to the Prudent Lender Standard) a Rating Comfort Letter (as defined below), (3) satisfies the Prudent Lender Standard, and (4) is an Affiliate of Borrower. As used herein, the term "**Prudent Lender Standard**" shall, with respect to any matter, be deemed to have been met if the matter in question (i) prior to a Securitization, is reasonably acceptable to Lender and (ii) after a Securitization, would be acceptable to a prudent lender of securitized commercial mortgage and mezzanine loans. As used herein, the term "**Rating Comfort Letter**" shall mean a letter issued by each of the applicable Rating Agencies which confirms that the taking of the action referred to therein will not result in any qualification, withdrawal or downgrading of any existing ratings of Securities created in a Secondary Market Transaction.

**6.15 Change in Residency**. Guarantor hereby represents and warrants that each Guarantor is a resident of the State of Maryland and that Guarantor's primary domicile is in the State of Maryland. Guarantor shall not change Guarantor's State or Commonwealth of residence and/or primary domicile to a State or Commonwealth that is a community property jurisdiction unless (i) Guarantor first (A) provides Lender at least ten (10) Business Days prior written notice thereof, and (B) if Guarantor is married at the time, causes Guarantor's spouse to execute and

deliver to Lender a spousal consent with respect to this Guaranty (which spousal consent shall be in form and substance reasonably satisfactory to Lender) (a "**Spousal Consent**"), and (ii) if Guarantor is not married at the time and subsequently marries, or if Guarantor enters into a new marriage, at any time when Guarantor is a resident (and/or has a primary domicile) in a community property jurisdiction, Guarantor causes his or her spouse to execute and deliver to Lender a Spousal Consent within ten (10) Business Days after the occurrence of any such marriage. Guarantor's failure to comply with any of the foregoing shall, at Lender's option, constitute an "Event of Default" hereunder and under the Loan Agreement.

[NO FURTHER TEXT ON THIS PAGE]

IN WITNESS WHEREOF, Guarantor has duly executed this Guaranty as of the date first above set forth.

**GUARANTOR:**

Christopher J. Donatelli, an Individual

Louis T. Donatelli, an Individual