**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| HIGHLAND PARK MEZZ LENDER LLC, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 25-1614 (RC) |
| | : | | |
| v. | : | Re Document No.: | 28 |
| | : | | |
| CHRISTOPHER J. DONATELLI, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT**

**I.  INTRODUCTION**

In July 2022, MF1 Capital LLC executed a loan for $17 million to two borrowers, Columbia Heights Ventures Parcel 26 Holdings, LLC and Highland Park West, LLC. Christopher J. Donatelli is the manager and holds a significant interest in both borrowing entities. The loan was purportedly guaranteed by Christopher and his father Louis T. Donatelli.  In January 2024, MF1 Capital assigned its rights related to the loan to Plaintiff Highland Park Mezz Lender LLC ("Plaintiff" or "Lender").  After the borrowers failed to make required payments, Plaintiff sought to recover amounts due under the Loan Agreement from the Guarantors, the Donatellis.  Once the suit was filed, however, Louis Donatelli claimed that he took no part in the Loan Agreement and that he was unaware his signature was used on the Guaranty.  After Plaintiff conducted its own investigation, it amended its Complaint to allege that Christopher forged his father's signature to fraudulently obtain the loan and stipulated to Louis's dismissal as a defendant.  To date, Christopher has failed to appear, file an answer, or otherwise respond to the complaints despite being personally served.  In October 2025, the Clerk of the Court entered a default against Christopher Donatelli.

Plaintiff now moves for a default judgment against Christopher Donatelli pursuant to Federal Rule of Civil Procedure 55(b)(2) in the amount of $28,314,156.06 for compensatory damages, plus $565,764.35 in attorneys' fees and enforcement costs, and punitive damages. For the reasons stated below, the Court grants Plaintiff's Motion for Default Judgment on all counts and finds that Christopher Donatelli has committed common law fraud by forging his father's signature as a Guarantor.

## II.  FACTUAL BACKGROUND[1]

In the summer of 2022, Christopher Donatelli sought to refinance an existing debt on two multi-family complexes located in the District of Columbia. Am. Compl. ¶ 8, ECF No. 13. Christopher holds a large interest and is the manager for both borrowing companies, Highland Park West, LLC and Columbia Heights Ventures Parcel 26 Holdings, LLC ("Borrowers"). Aff. of Dan Kinchla in Supp. Pl. Ex. 2 ("Loan Agreement") at 92, ECF No. 28-5.[2] In May 2022, before the Loan Agreement was finalized, MF1 Capital LLC raised concerns about insufficient collateral based on Christopher's financials. Houston Decl. Ex. D ("Guarantor Structure Email") at 1, ECF No. 28-12. To meet the requirements for the loan, Christopher added his father, Louis Donatelli as a Guarantor, despite Louis's lack of economic interest in the borrowing entities. *Id.* In support of the Loan Agreement, Christopher also submitted his father's financial information, which included Louis's net worth, total assets, and total liabilities. Houston Decl. Ex. E ("Financial Statement Email") at 1, 4, ECF No. 28-13. Both Christopher and Louis appeared to have signed as Guarantors of the Loan Agreement with MF1 Capital LLC for $17,000,000. Am.

---

[1] Because the Clerk of the Court entered a default against Christopher, the Court treats all well-pleaded allegations in the Amended Complaint as admitted. Fed. R. Civ. P. 8(b)(6); *Shelton v. Dist. Cooling, LLC*, No. 22-cv-3333, 2024 WL 4103707, at *2 (D.D.C. Sep. 6, 2024).

[2] Unless otherwise indicated, all record pin cites are to the ECF-generated page numbers.

Compl. ¶ 8; Aff. of Dan Kinchla Supp. Pl. ("Kinchla Aff. I") ¶¶ 2–3, ECF No. 28-3.  Kinchla

Aff. I Ex. 1 ("Guaranty") at 12, ECF No. 28-4.

A few provisions of the Loan Agreement are relevant here.  First, the Loan Agreement

holds each Borrower "personally liable to Lender for the Losses it incurs arising out of or in

connection with . . . willful misconduct, material misrepresentation or failure to disclose a

material fact by" any Borrower or Guarantor.  Loan Agreement at 11, Art. 3, § 3.02(a).

Additionally, the Loan Agreement states that "Debt shall be fully recourse to Borrower in the

event that . . . any Borrower Party commits fraud in connection with the Loan," or "Borrower

fails to make any payment of the Accrued Principal Amounts."  *Id.* at 13, Art. 3, § 3.03(e), (i).

Accrued Principal Amounts are defined as "any interest on the Loan [that] accrues and remains

unpaid as a result of the insufficiency of Available Excess Cash Flow to cover the Monthly

Payment Amount."  *Id.* at 8, Art. 2, § 2.04(b).  Accrued Principal Amounts also accrue interest.

*Id.*  Lastly, the Loan Agreement defines Debt as "the outstanding principal amount set forth

in . . . this Agreement . . . together with all interest accrued and unpaid thereon and all other sums

due to Lender in respect of the Loan under the Note, this Agreement, or any other Loan

Document."  *Id.* at 60, Sched. 1.

Correspondingly, the Guaranty Agreement states that the Guarantors "absolutely and

unconditionally guarantee[] to Lender the prompt and unconditional payment of the Guarantee

Recourse Obligations of Borrower," defined as "all obligations and liabilities of Borrower for

which Borrower shall be personally liable pursuant to <u>Article 3</u> of the Loan Agreement."

Guaranty at 1.  Under the Guaranty, "Lender may, at its option, proceed directly and at once,

without notice, against Guarantor to collect and recover the full amount of the liability" owed by

Borrower under the Loan Agreement.  Guaranty at 7, § 6.01.  The Guaranty also allows the

Lender to recover from the Guarantors without first proceeding against the Borrowers. *Id.* Moreover, the Guaranty requires that the Guarantor reimburse Lender "for all expenses (including counsel fees and disbursements) incurred by Lender in connection with the collection of the Guaranteed Recourse Obligations of Borrower or any portion thereof or with the enforcement of this Guaranty." *Id.* at 2, § 2.02. Though the Loan Agreement was between Borrowers and MF1 Capital LLC, in January 2024, MF1 Capital assigned its rights in the loan to Plaintiff Highland Park Mezz Lender LLC. Am. Compl. ¶¶ 11–12; Kinchla Aff. I Ex. 3 ("Assignment"), ECF No. 28-6.

After receiving the loan, the Donatellis never made any payments to the principal loan or to the accrued interest. Second Suppl. Aff. of Dan Kinchla Supp. Pl.'s Mot. Default J. ("Kinchla Aff. II") ¶ 2, ECF No. 31-1. On May 20, 2025, Plaintiff filed suit against Christopher and Louis to collect money owed under the Guaranty. Compl. ¶ 25, ECF No. 1. Once served with the Complaint, Louis denied signing the Guaranty. Answer to Compl. ¶ 1, ECF No. 10. Louis provided Plaintiff with an affidavit declaring that he had no knowledge regarding the loan, did not sign the agreement, and did not authorize anyone to sign on his behalf. Houston Decl. Ex. B ("Louis Decl.") ¶ 2, ECF No. 28-10. Louis also provided an affidavit signed by his son Christopher admitting that he had forged his father's signature without his knowledge or consent. Houston Decl. Ex. A ("Christopher Decl.") ¶ 1, ECF No. 28-9.

Plaintiff investigated Louis Donatelli's explanation, and the Court ordered preliminary discovery for Plaintiff to ascertain the veracity of Louis's claims. Scheduling Order ¶ 4, ECF No. 17. On November 10, 2025, Plaintiff stipulated to voluntarily dismiss its claims against Louis. Stipulation of Dismissal, ECF No. 27. Meanwhile, Christopher did not appear or respond to the suit, despite being personally served the Amended Complaint on July 21, 2025. Aff. of

Default Ex. 1 ("Aff. of Service"), ECF No. 22-1.  The Clerk of the Court therefore entered a

default against Christopher on October 3, 2025.  Clerk's Entry of Default, ECF No. 25; Fed. R.

Civ. P. 12(a)(1)(A)(i) (requiring a defendant to "serve an answer within 21 days of being served

with a summons").  Plaintiff now requests that the Court enter a default judgment with a fraud

finding against Christopher in the amount of $28,314,156.06 for compensatory damages,[3]

$565,764.35 in attorneys' fees and enforcement costs, and punitive damages.  Mem. P. & A.

Supp. Pl.'s Mot. Default J. ("Mot. Default J."), ECF No. 28-1; Kinchla Aff. II ¶¶ 5–6; Suppl.

Kinchla Aff. ("Kinchla Aff. III") ¶ 3, ECF No. 29.

### III.  LEGAL STANDARD

The Court may enter a default judgment in accordance with Rule 55 of the Federal Rules

of Civil Procedure when the defendant is an "essentially unresponsive party whose default is

plainly willful, reflected by its failure to respond to the summons or complaint, the entry of

default, or the motion for default judgment."  *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 12

(D.D.C. 2013) (citation modified).  For example, default judgment is appropriate when a

defendant "makes no request to set aside the default" and "gives no indication of a meritorious

defense."  *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 104 (D.D.C. 2015) (quoting

*Int'l Painters v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008)).  Upon entry of

default by the Clerk of the Court, the "defaulting defendant is deemed to admit every well-

pleaded allegation in the complaint."  *Int'l Painters v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d

26, 30 (D.D.C. 2002).

---

[3] This amount was updated after Plaintiff responded to the Court's order directing
Plaintiff to submit supplemental briefing and evidence regarding interest calculations and
whether any loan payments were ever made.  *See* Order, ECF No. 30; Pl.'s Resp., ECF No. 31.

Although a default "establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain." *Id.* "'Accordingly, when moving for default judgment, the plaintiff must prove its entitlement to the amount of monetary damages requested' using 'detailed affidavits or documentary evidence' on which the court may rely." *Fanning v. C & L Serv. Corp.*, 297 F.R.D. 162, 166 (D.D.C. 2013) (quoting *Fanning v. Permanent Sol. Indus., Inc.*, 257 F.R.D. 4, 7 (D.D.C. 2009)). "When the damages cannot be calculated with relative simplicity, however, the court may order an evidentiary hearing." *Int'l Painters & Allied Trades Indus. Pension Fund*, 239 F. Supp. 2d at 30; *see* Fed. R. Civ. P. 55(b)(2).

## IV.  ANALYSIS

The Court will address the default judgment, determination of damages, finding of fraud, and request for punitive damages.  First, Plaintiff's Motion for Default Judgment is proper because Christopher has not responded to the Complaint, Amended Complaint, entry of default, or Motion for Default Judgment—despite having been personally served with the Amended Complaint—so entering a default judgment against him is therefore appropriate.  Aff. of Service at 2; *see Serv. Emps. Int'l Union Nat'l Indus. Pension Fund v. Artharee*, 942 F. Supp. 2d 27, 29–30 (D.D.C. 2013) ("Where, as here, there is a complete 'absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense, it is clear that the standard for default judgment has been satisfied.'" (quoting *Int'l Painters v. Auxier Drywall, LLC*, 531 F. Supp. 2d at 57)).  Having dispensed with that preliminary issue, the Court turns to the remaining issues of determining the amount of damages, Plaintiff's request for a finding of fraud, and punitive damages.

## A. Damages Determination

After reviewing the record, the Court finds a sufficient basis to support Plaintiff's requested damages against Defendant. The Court is not required to conduct a hearing for damages as long as there is "a basis for the damages specified in the default judgment." *United States v. Gant*, 268 F. Supp. 2d 29, 32 (D.D.C. 2003). In support of this request, the Court relies on Plaintiff's "detailed affidavits [and] documentary evidence." *Fanning*, 297 F.R.D. at 166.

Here, Plaintiff submitted declarations by Senior Vice President and Head of Special Asset Management for Berkshire Residential Investments, Dan Kinchla. *See* Kinchla Aff. I; Kinchla Aff. II. The Kinchla affidavits and their attachments support Plaintiff's computations with detailed timeframes, Interest Rates, and corresponding Capitalized Interest. Kinchla Aff. I Ex. 4 ("Interest Spreadsheet I"), ECF No. 28-7; Kinchla Aff. II Ex. 1 ("Interest Spreadsheet II"), ECF No. 31-2. For example, the first Capitalized Interest amount uses a 7.7% Interest Rate based on the full $17 million principal balance. Interest Spreadsheet II at 2. The Interest Rate is defined in the Loan Agreement as "the sum of (a) the Spread, plus (b) the Term SOFR Interest Rate for such Interest Period." Loan Agreement at 64. Under the Loan Agreement, "Spread" is defined as 6.3%. *Id.* at 71. And the Term SOFR Interest Rate is "the higher of (a) one hundred forty basis points (i.e., 1.40%) and (b) the rate identified as '1 Month CME Term SOFR' by the Term SOFR Administrator on the CME Market Data Platform."[4] *Id.* at 72. Thus, the original rate of 7.7% equals the 6.3% Spread plus the 1.4% Term SOFR Interest Rate. Additionally, the

---

[4] The Term SOFR Interest Rate is defined as "the quotient of (a) Term SOFR applicable to such Interest Period, divided by (b) a percentage equal to 100% minus the Reserve Requirement (if any) applicable to such Interest Period." Loan Agreement at 72. Because the Reserve Requirement was 0% at all relevant times, the Term SOFR Interest Rate equaled the Term SOFR. *See id.*; Reserve Requirements, Board of Governors of the Federal Reserve System, (last updated Nov. 26, 2025) https://www.federalreserve.gov/monetarypolicy/reservereq.htm; 12 C.F.R. § 204.4(f).

Interest Rate increased 5% based on the "Default Rate," beginning in November 2023.  *Id.* at 61; Interest Spreadsheet II at 3.  In sum, Mr. Kinchla's spreadsheet justifies Plaintiff's compensatory damages claim because it provides a detailed account for each period Borrowers accrued Capitalized Interest along with the applicable Interest Rate.  *See* Interest Spreadsheet II.

Additionally, Plaintiff's request for attorneys' fees is supported by the contractual terms of the Guaranty.  *See Est. of Raleigh v. Mitchell*, 947 A.2d 464, 473 (D.C. 2008) (noting an "exception" to the general rule that each litigant must bear its own attorneys' fees and costs "arises when the parties by contract agree that one or the other shall pay such fees and costs").  The Guaranty explicitly holds the Guarantor accountable "for all expenses (including counsel fees and disbursements) incurred by Lender in connection with the collection of the Guaranteed Recourse Obligations of Borrower or any portion thereof or with the enforcement of this Guaranty."  Guaranty at 2, § 2.02.  Here, Plaintiff incurred costs enforcing Defendant's obligations under the Guaranty, which specifically included a clause for reimbursement of counsel fees.  *Id.*  Further, Plaintiff submitted declarations outlining its enforcement costs and fees owed to third parties, including legal fees related to discovery in this case, providing the Court with sufficient documentary evidence.  Kinchla Aff. III ¶ 3.  Therefore, the Court finds a sufficient basis for Plaintiff's claim of $28,314,156.06 in compensatory damages and $565,764.35 in enforcement costs.

### B.  Finding of Fraud

Plaintiff argues that the Court should enter a finding of fraud against Christopher Donatelli to secure a default judgment against him as nondischargeable under federal bankruptcy law.  Mot. Default J. at 9.  To support Plaintiff's fraud claim, it submitted record evidence

including a declaration signed by Christopher stating that he forged his father's signature without his knowledge.  Christopher Decl. ¶ 1.

Under federal bankruptcy law, a debt is nondischargeable if the money was obtained by false pretenses, a false representation, or actual fraud.  11 U.S.C. § 523(a)(2)(A).  "'[A]ny debt . . . for money, property, services, or . . . credit, to the extent obtained by' fraud encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor."  *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998).  "[A]nything that counts as 'fraud' and is done with wrongful intent is 'actual fraud.'"  *Husky Intern. Elecs., Inc. v. Ritz*, 578 U.S. 355, 360 (2016).

Under District of Columbia law, the elements for common law fraud are "(1) a false representation (2) made in reference to a material fact, (3) with knowledge of its falsity, (4) with the intent to deceive, and (5) an action that is taken in reliance upon the representation." *Hercules & Co. v. Shama Rest. Corp.*, 613 A.2d 916, 923 (D.C. 1992).  Federal Rule of Civil Procedure 9 requires that a plaintiff "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  To this end, a complaint must "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud."  *U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1278 (D.C. Cir. 1994)).  Not only must fraud be particularly pleaded, but it "must be established by clear and convincing evidence, which is not equally consistent with either honesty or deceit." *Bennett v. Kiggins*, 377 A.2d 57, 59 (D.C. 1977).  To show a finding of fraud by clear and convincing evidence, that evidence must "produce in the mind of the trier of fact a firm belief or conviction

as to the facts sought to be established." *In re Dortch*, 860 A.2d 346, 358 (D.C. 2004) (quoting *In re T.J.*, 666 A.2d 1, 16 n.17 (D.C. 1995)).

Here, Plaintiff has pleaded with particularity, and supported those allegations with clear and convincing evidence, that Christopher Donatelli made an intentionally false representation of a material fact on July 1, 2022, when he misled MF1 Capital LLC to believe that his father, Louis Donatelli, signed as a Guarantor to the Loan Agreement.  First, Christopher falsely represented Louis's signature on the Guaranty Agreement.  Christopher Decl. ¶ 1; Am. Compl. ¶¶ 33–34.  Second, the identity of the Guarantors and their financial collateral was material to Christopher obtaining the Loan Agreement.  Kinchla Aff. I ¶¶ 3, 10; Guarantor Structure Email; Am. Compl. ¶ 34.  Third, Christopher knew the signature was false because he forged it himself.  Christopher Decl. ¶ 1; Am. Compl. ¶ 35.  Fourth, Christopher intended to deceive MF1 Capital LLC by forging his father's signature and providing supplemental financial information regarding his father's assets to induce MF1 Capital LLC to make the loan.  Christopher Decl. ¶ 1; Am. Compl. ¶ 36; Financial Statement Email at 1.  Lastly, MF1 Capital LLC relied on Louis's involvement because Christopher did not meet the collateral requirements to obtain the $17,000,000 loan on his own.  Am. Compl. ¶ 37; Guarantor Structure Email at 1; Kinchla Aff. I ¶ 10.

Based on these allegations and the evidence submitted with Plaintiff's Motion for Default Judgment, the Court finds that there is clear and convincing evidence that Christopher Donatelli intentionally forged his father's signature to induce MF1 Capital LLC to grant Borrowers the loan.  Thus, the record supports his liability for Count III of the Amended Complaint for common law fraud.

### C.  Punitive Damages

Finally, Plaintiff argues that "Christopher Donatelli's conduct also provides a sufficient basis for the award of substantial punitive damages" because Christopher "forged his father's signature . . . to induce millions of dollars in loans, in flagrant and willful disregard of the Lender's rights." Mot. Default J. at 9.  "The basic purpose of punitive damages is to deter and punish." *Calvetti v. Antcliff*, 346 F. Supp. 2d 92, 108 (D.D.C. 2004).  "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Smith v. Wade*, 461 U.S. 30, 46–47 (1983) (quoting Restatement (Second) of Torts § 908(2) (A.L.I. 1977)).  Plaintiffs must show that "the act was accompanied by conduct and a state of mind evincing malice or its equivalent." *Butera v. Dist. of Columbia*, 235 F.3d 637, 657 (D.C. Cir. 2001) (quoting *Jonathan Woodner Co. v. Breeden*, 665 A.2d 929, 938 (D.C. 1995)).  However, evidence of fraud alone is insufficient to justify punitive damages. *See BWX Elecs. Inc. v. Control Data Corp.*, 929 F.2d 707, 712 (D.C. Cir. 1991).

The Court takes into account Plaintiff's harm and notes that this appears to be a brazen act of fraud to obtain an enormous sum of money.  However, the Court is uncompelled by Plaintiff's two-sentence argument that a punitive award is necessary here.  *See* Mot. Default J. at 9.  Plaintiff has failed to present evidence that Christopher maliciously intended to harm Plaintiff or willfully disregard its rights beyond the fraud committed.  Additionally, the Court notes the severe consequences of the terms of the Loan Agreement for nonpayment, including its provisions that have caused the amount owed to have almost doubled in under four years.  Even were the malice standard met, the Court finds that an award for the principal loan, the large amount of accrued principal, interest, attorneys' fees, and enforcement costs, totaling a near $30

11

million judgment—which will likely be nondischargeable in bankruptcy proceedings—is sufficient to punish Christopher and deter future unlawful conduct. *See also Kifle v. ZP Towing*, No. 22-cv-2056, 2024 WL 1213208, at *7 (D.D.C. Mar. 21, 2024) (declining to award punitive damages based merely on finding of fraud).

## V.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Default Judgment (ECF No. 28) is **GRANTED**.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  April 7, 2026                                RUDOLPH CONTRERAS
                                                     United States District Judge

12